UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| V. | ) | NO. 2:13-CR-70 |
| | ) | JUDGE GREER |
| | ) | |
| CRYSTAL RENEE DAWN POORE | ) | |
| | ) | |
| **Defendant.** | ) | |

## SENTENCING MEMORANDUM
supplement

*Conditions of supervised release*

Ms. Poore respectfully requests a few minor modifications to her terms of supervised release.

Local Rule 83.10(b)(5), contained in Paragraph 90 of the Presentence Report: Change "for the purpose of deviant sexual arousal" to "for purpose of sexual interest in children." This would bring the condition in line with the Sixth Circuit's ruling in *United States v. Shultz*, 733 F.3d 616 (6th Cir. 2013).

Local Rules 83.10(b)(1) and (b)(7), contained in Paragraphs 86 and 92 of the Presentence Report: Ms. Poore has no objection to participating in sex offender treatment. In fact, she actively wants to participate. Nor would she object to undergoing a psychosexual evaluation. However, both treatment and evaluation currently involve plethysmograph assessments. Refusal to consent to

plethysmograph testing while in treatment would result in being discharged from treatment, which is a violation of the terms of supervised release.

This Court is likely familiar with male plethysmography and the physically intrusive nature of it. Female plethysmography is even more intrusive than male: it requires insertion of a monitoring device into the woman's vagina.[1] Furthermore, female plethysmography lacks "a sound theoretical basis for interpreting" what the measurements taken actually mean. *Id*.

It is not possible to predict what means treatment providers will use a quarter century from now to monitor involuntary responses to stimuli.[2] In an abundance of caution, Ms. Poore respectfully requests this court modify the conditions under 83.10(b)(1) and (b)(7) to require a hearing, in which she would be represented by counsel, prior to imposition of plethysmography or other physically intrusive testing.

*A sentence sufficient, but not greater than necessary*

Ms. Poore respectfully suggests a sentence of 292 months incarceration, followed by lifetime supervision, would be sufficient, but not greater than necessary

---

[1] *See* http://homepage.psy.utexas.edu/HomePage/Group/MestonLAB/HTML%20files/Lab_vagpleth.htm (last visited October 30, 2014)

[2] Though if the first 40 years of female plethysmography have failed to produce a "sound theoretical basis" for interpreting readings, the next 25 years may not be much more revelatory.

to accomplish the goals of 18 U.S.C. § 3553. The guidelines adequately account for her offense behavior. Had she engaged in the same conduct with a single child of whom she was not caretaker, her guidelines would be 168 to 210 months. Had she engaged in the same conduct with just one of her children, her guidelines would be 210 to 262 months, an increase of 3.5 to 5 years. Because she engaged in the offense conduct with three of her children, her guidelines are increased to 292 to 365 months, an increase of about 6.5 years to 8.5 years.

The government dedicates its sentencing memorandum to Ms. Poore's status as the children's mother, inadvertently perpetuating the damaging myth that a mother would never harm her child.[3] The validity of the government's perspective on

---

[3] "Whereas it is a matter of fact that women are biologically constituted to produce offspring and feed them, the discourse on the biological constitution of women has nothing to do with the more subtle moral aspects of the maternal role, which is a cultural phenomenon and stems from a desire for order and social control." Ambrosini and Stanghellini, *Myths of motherhood. The role of culture in the development of postpartum depression.* 48 ANN IST SUPER SANITÁ 280 (2012). The "sentimentalized conception of the good mother casts a long, guilt-inducing shadow over real mothers' lives." http://books.google.com/books/about/The_myths_of_motherhood.html?id=hTRFD23I4_gC (reviewing SHARI THURER, THE MYTHS OF MOTHERHOOD: HOW CULTURE REINVENTS THE GOOD MOTHER (1994)("I cannot recall ever treating a mother who did not harbor shameful secrets about how her behavior or feelings damaged her children.")). The continued social expectation that a "good mother" would never even think of harming her child acts as a barrier to women seeking treatment for postpartum depression, of which "thoughts of harming her child" are a symptom. http://www.mayoclinic.org/diseases-conditions/postpartum-depression/basics/symptoms/con-20029130, *see also* SARAH BLAFFER HRDY, MOTHER NATURE (1999) (traditional views of maternal behavior are essentially wishful thinking).

3

motherhood (or undersigned counsel's) is immaterial to the present proceedings. The criminal courtroom is an inappropriate forum for such a debate, because to base a sentencing decision on Ms. Poore's status as the mother of the child victims violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution. Only women can be mothers. The Supreme Court of the United States, in 1971, held different treatment under the law on the basis of gender is subject to scrutiny under the Equal Protection Clause. *See Reed v. Reed*, 404 U.S. 71 (1971). The Fourth Circuit has held "a sentence based on an unconstitutional classification is one 'imposed in violation of law'." *United States v. Holmes*, 60 F.3d 1134, 1137 (4th Cir. 1995). The Sentencing Commission perhaps contemplated this fact when drafting U.S.S.G. § 2G2.1(b)(5) to cover care givers regardless of gender.

What Ms. Poore did was awful. But for this Court to hold it was *more* awful and deserving of greater punishment because Ms. Poore was the victims' *mother*, rather than any other sort of care giver or custodian, violates the Equal Protection Clause.

Two hundred ninety two months incarceration is adequate to punish Ms. Poore, specifically deter her from criminal behavior, and act as a general deterrent. Regardless of how long a sentence Ms. Poore receives, the Bureau of Prisons will

4

afford her sex offender treatment in the few years immediately before her release.[4]
Ms. Poore will be eligible for mental health treatment for the duration of her sentence. If the strict conditions of supervised release imposed by this Court are inadequate to control Ms. Poore's behavior, that can also be addressed in pre-release planning or early in supervision.

*Designation recommendation*

Ms. Poore respectfully requests this Court to recommend incarceration at FCI Marianna or FMC Carswell. These two facilities are the only Bureau of Prisons facilities that have sex offender treatment programs and house women.

Respectfully submitted this 4th day of November, 2014.

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

   s/ Laura E. Davis
Laura E. Davis No. 28638
800 S. Gay Street, Suite 2400
Knoxville, TN  37929
(865) 637-7979

---

[4] Therapists and child sex offenders can only accomplish so much in a prison setting, where there are no children, because much of extended sex offender treatment focuses on how to act or react to situations in the non-prison world.

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2014, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                     s/ Laura E. Davis
                                                       Laura E. Davis